```
                 UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Bank of America, N.A.**

    v.                              Civil No. 14-cv-455-PB
                                        Opinion No. 2015 DNH 233
**Citizens Bank**


### MEMORANDUM AND ORDER

This case arises from a series of loans issued to nonparty Linda Burke that were secured by mortgages on Burke's home (the "Property"). Burke defaulted on her loans and her lenders, Bank of America and Citizens Bank, anticipate they will need to foreclose on the Property. Before initiating foreclosure, however, Bank of America brought this suit to determine which bank's lien takes first priority position. The case is before me on cross-motions for summary judgment.

### I.  BACKGROUND

In May 2005, Countrywide, Bank of America's predecessor in interest, loaned Burke $342,000, secured by a mortgage on the Property. Doc. No. 16-5 at 1-3. Countrywide recorded the mortgage at the Rockingham County Registry of Deeds in first priority position. Id. at 1. Then, in April 2006, Burke obtained a $150,000 home equity line of credit from Citizens,

also secured by a mortgage on the Property.  Doc. No. 18-5 at 3-4.  The home equity line was open-ended, meaning that Burke could "borrow, repay and re-borrow such amounts as desired, subject to the terms and conditions of the Agreement."  Id. at 4.  According to its terms, the mortgage securing the equity line could only be discharged if Burke paid down and terminated the equity line.  Doc. No. 18-6 at 9.  Citizens recorded its mortgage in second priority position behind Countrywide's 2005 mortgage.  Doc. No. 18-5 at 1.

In 2008, Burke negotiated with Countrywide to refinance her debt on the Property.  During the refinancing process, Countrywide discovered Citizens' equity line and requested a payoff amount in an attempt to close the equity line and terminate Citizens' mortgage.  See Doc. No. 16-1 at 2.  On March 21, 2008, Citizens faxed Countrywide a notice requesting $140,647.18 to close the equity line.  Doc. No. 16-6; 18-1 at 3-4.  The fax stated that "the payoff" was "valid" through March 28, 2008, and included a notice, which provided:

> Any unposted checks or charges that are not included in the above payoff amount are the responsibility of the customer upon payoff.  The customer is also responsible for the entire balance on the account regardless of the quoted payoff amount.  If the account is secured by a mortgage, the mortgage will not be released until the above conditions are met.

Doc. No. 16-6.  The payoff amount included a $250.00 prepayment penalty and a $17.00 "recording fee" to cover Citizens' expense to record the discharge of the mortgage.[1]  Id.

That same day, Countrywide loaned Burke $417,000, secured by a mortgage on the Property, in an attempt to discharge and replace its own 2005 mortgage and pay off Citizens' equity line.[2] Doc. Nos. 16-1 at 1-2; 16-3.  The equity line was not closed that day, however, and three days later, on March 24, 2008, Burke borrowed $10,000 more against the equity line.  Doc. No. 18-1 at 4.  Thus, when Citizens finally received Countrywide's $140,647.18 check on March 27, 2008, the check was insufficient to pay off the equity line.  Id.  Citizens nonetheless deposited

---

[1] The fax also included a place for Burke's signature, and check boxes in which Burke could indicate whether she intended to close the home equity line or keep it open.  Burke did not sign the form at the closing or otherwise indicate that she intended to close the equity line.  Id.

[2] There is a discrepancy in the refinancing numbers. Countrywide's second loan of $417,000 was insufficient to pay off both Countrywide's first loan of $326,986.32 *and* the home equity line of $140,647.18.  See Doc. No. 16-1 at 1-2; 16-2. The parties acknowledged at oral argument that another, unrelated loan was taken out to cover the difference, as suggested by the HUD statement.  See Doc. No. 16-2.  Because the discrepancy does not affect the outcome of this case, I do not dwell on it here.

3

Countrywide's check, reducing the balance on the equity line to $8,695.91.  Doc. No. 18-11 at 4.  The equity line remained open and the mortgage securing it was not discharged.

On April 1, 2008, Citizens notified Burke by letter that it was unable to close the home equity line.  Doc. No. 16-15.  The letter requested that Burke pay down the rest of the balance so that Citizens could "close the account and release the collateral."  Id.  Instead of paying off the equity line, however, Burke continued to borrow against it and later defaulted on her payment obligations.  See Doc. No. 18-11 at 4-8.  As of October 2, 2015, Burke owed $154,714.68 on the equity line.  Doc. No. 18-2 at 1.

Although Citizens accepted Countrywide's payoff check and later notified Burke that it could not close the home equity line, it did not inform Countrywide that the equity line remained open.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The evidence submitted in support of the motion must be considered

in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A material fact "is one 'that might affect the outcome of the suit under the governing law.'"  United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  If the moving party satisfies this burden, the nonmoving party must then "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

On cross motions for summary judgment, the standard of review is applied to each motion separately.  See Am. Home Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006) (applying the standard to each motion where cross motions were filed); see also Mandel v. Bos. Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006) ("The presence of cross-

motions for summary judgment neither dilutes nor distorts this standard of review."). Hence, I must determine "whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Group, Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

### III. ANALYSIS

When a lien is discharged, priority rights associated with the lien ordinarily are lost and the next most senior lienholder succeeds to the priority position of the lienholder whose lien was discharged. See Hilco, Inc. v. Lenentine, 142 N.H. 265, 265 (1997). If, however, a junior lienholder pays off the senior lien, the junior lienholder may sometimes invoke the doctrine of equitable subrogation to skip over intermediate lienholders and claim the priority rights associated with the discharged lien. Restatement (Third) of Prop.: Mortgs. § 7.6 (Am. Law Inst. 1997) ("Restatement of Property"). The doctrine exists to prevent an intermediate lienholder from obtaining "an unwarranted and unjust windfall" that would result if the intermediate lienholder were to acquire priority rights as a result of a debt payment made by a junior lienholder. Restatement of Property § 7.6 cmt. a.

In New Hampshire, equitable subrogation applies only when the following four conditions are satisfied:

> (1) [T]he subrogee cannot have acted as a volunteer; (2) the subrogee must have paid a debt upon which it was not primarily liable; (3) the subrogee must have paid the entire debt; and (4) subrogation may not work any injustice to the rights of others.

Chase v. Ameriquest Mortg. Co., 155 N.H. 19, 27 (2007). Equitable subrogation is a "broad doctrine" to be given "liberal application." Id. The subrogee – here, Bank of America – bears the burden of showing it is entitled to equitable subrogation.[3] Id. at 26.

Citizens presents three arguments to support its contention that Bank of America is not entitled to equitable subrogation. First, it argues that Bank of America cannot satisfy the

---

[3] As the Restatement of Property notes, this type of case is better viewed as a claim for modification and replacement than a claim for equitable subrogation because a lienholder cannot technically be subrogated to its own lien. Restatement of Property § 7.6 cmt. e ("Obviously subrogation cannot be involved unless the second loan is made by a different lender than the holder of the first mortgage; one cannot be subrogated to one's own previous mortgage. Where a mortgage loan is refinanced by the same lender, a mortgage securing the new loan may be given the priority of the original mortgage under the principles of replacement and modification of mortgages."). This distinction does not affect my analysis, however, because the result would be the same regardless of the nomenclature that is used to describe the claim.

doctrine's third requirement because it failed to completely payoff the home equity line. Next, it argues that Bank of America cannot satisfy the fourth requirement because Citizens would be unfairly prejudiced if it lost its priority position. Finally, it asserts that the doctrine is inapplicable to cases such as this one because Bank of America's predecessor had actual knowledge of the home equity line when it refinanced the first mortgage. I address each argument in turn.

**A.     Paying Off Citizens' Entire Debt**

It is undisputed that Countrywide paid the entirety of its 2005 mortgage during the refinancing process. Doc. No. 18-1 at 4. Nonetheless, Citizens argues that Bank of America is not entitled to equitable subrogation because it failed to pay off *Citizens'* entire debt. This argument is unpersuasive because it focuses on the wrong loan.

The doctrine of equitable subrogation holds that a subrogee must pay the "entire debt" *of the party whose rights it seeks to succeed*. See Chase, 155 N.H. at 27; Restatement of Property § 7.6 cmt. a ("Where subrogation to a mortgage is sought, the entire obligation secured by the mortgage must be discharged."). This requirement exists to prevent partial subrogation, where a

subrogee pays only part of the senior lienholder's debt.[4] See Rabo Agrifinance, Inc. v. Terra XXI, Ltd., 583 F.3d 348, 354 (5th Cir. 2009) ("Where a surety pays only part of a single debt, he cannot receive rights of subrogation."). It does not follow, however, that a subrogee must also pay the debts of other lienholders – particularly intervening interests over which it seeks to gain priority. See Bilden Props., LLC v. Birin, 165 N.H. 253, 259 (2013) (granting equitable subrogation even though the subrogee did not pay any of the debt owed to the intermediate lienholder).

Here, it is undisputed that Countrywide paid off the first mortgage during the refinancing process. Doc. No. 18-1 at 4. During that same process, Countrywide attempted to pay off Citizens' home equity line, but failed, and Citizens' lien remained on the Property. Because Citizens' lien remains today, Bank of America now invokes equitable subrogation to essentially "jump over" Citizens' lien. If I were to adopt Citizens'

---

[4] As the Restatement of Property notes, partial subrogation is not permitted because it "would have the effect of dividing the security between the original obligee and the subrogee, imposing unexpected burdens and potential complexities of division of the security and marshaling upon the original mortgagee." Restatement of Property § 7.6 cmt. a.

argument requiring Bank of America to pay Citizens' lien off, there would be no need for equitable subrogation, since there would be no other lienholders to jump over.  This result makes no sense, and I accordingly reject Citizens' argument.

**B.   Prejudice to Citizens**

Citizens next argues that applying equitable subrogation would "work an injustice" on its rights.  See Chase, 155 N.H. at 27.  It claims that subrogation would prejudice Citizens by demoting the priority of its lien, thereby reducing its ability to recover from Burke.  See Doc. No. 18-1 at 8.

The facts here undermine Citizens' claim of prejudice. First, Bank of America is only seeking $326,986.32, the amount it used to pay off the original Countrywide mortgage, and not more.[5]  Doc. No. 16-1 at 3.  Second, Citizens' priority position

---

[5] The Restatement of Property recognizes that "there is no right of subrogation with respect to any excess funds:"

> Subrogation will be recognized only if it will not materially prejudice the holders of intervening interests. The most obvious illustration is that of a payor who lends the mortgagor more money than is necessary to discharge the preexisting mortgage. The payor is subrogated only to the extent that the funds disbursed are actually applied toward payment of the prior lien. There is no right of subrogation with respect to any excess funds.

Restatement of Property § 7.6 cmt. e.

10

remains the same as it was before the refinancing – no better and no worse.  Third, Citizens received a $140,647.18 payoff from Countrywide in 2008 to which it was not otherwise entitled.  It deposited that payoff, yet maintained both its home equity line and its priority position, giving Citizens a double benefit.  And fourth, without subrogation, Citizens would succeed to Countrywide's 2005 priority position without having paid Countrywide's debts, giving it an "unjust and unwarranted windfall."  See Restatement of Property § 7.6 cmt. a.  Rather than prejudice Citizens, this priority windfall would unjustly enrich Citizens at Bank of America's expense – an outcome the doctrine of equitable subrogation was designed to prevent.  See id.

    Citizens does not attempt to refute any of these contentions.[6]  Instead, it argues that Bank of America should be

---

[6] At oral argument, Citizens argued that Countrywide's refinancing of Burke's original mortgage prejudiced it by increasing Burke's total indebtedness, making her more likely to default.  This theory of prejudice is too speculative to warrant relief.  It would require me to engage in a series of assumptions about Burke's financial status – for example, that the refinancing increased, rather than decreased, her likelihood of default – that the parties have not adequately briefed here.  Moreover, if anything, the facts show that Citizens was helped more than hurt by Countrywide's refinancing, because Citizens received a $140,647.18 check from Countrywide to which it was not otherwise entitled.

barred from claiming equitable subrogation because its predecessor was negligent in failing to ensure that the equity line had been discharged before it proceeded with the refinancing.  Doc. No. 18-1 at 8-12 (noting Countrywide's "sloppy" refinancing).  Our cases make clear, however, that "negligence on the part of a surety does not invalidate the right to subrogate." Chase, 155 N.H. at 28 (citing Fifield v. Mayer, 79 N.H. 82, 85 (1918)).  Indeed, the "principle [of equitable subrogation] is that the lien-holder's equitable rights are not infringed, impaired, or in any respect changed by the mere fact that the other party was negligent...." Fifield, 79 N.H. at 85.  In other words, Countrywide's failure to discharge Citizens' loan does not by itself prevent subrogation.

C.   **Actual Knowledge of the Intermediate Lien**

Citizens further argues that Bank of America may not claim equitable subrogation because Countrywide knew of Citizens' home equity line during the refinancing process.  The New Hampshire Supreme Court has held that constructive notice of another lien does not bar subrogation, but has not considered a case involving actual knowledge.  See, e.g., Bilden Props., 165 N.H. 253 (lender had constructive, not actual notice); Chase, 155 N.H. 19 (lender had no notice because of fraudulent deception);

Fifield, 79 N.H. 82 (constructive notice).  Faced with what it sees as a gap in controlling law, Citizens urges me to adopt the majority view among other states that actual knowledge should bar subrogation.  Bank of America counters that a lender's actual knowledge of another lien should be irrelevant, citing the Restatement of Property.  See Restatement of Property § 7.6.

When a case turns on an unresolved issue of state law, a federal court must consider whether to certify the issue to the state court for authoritative resolution.  See VanHaaren v. State Farm Mut. Auto. Ins. Co., 989 F.2d 1, 3 (1st Cir. 1993) ("Absent controlling state court precedent, a federal court sitting in diversity may certify a state law issue to the state's highest court, or undertake its prediction when the course the state courts would take is reasonably clear.") (internal quotations omitted); N.H. Sup. Ct. R. 34.  Here, however, neither party has asked the court to certify the question; expeditious action is required to permit the parties to proceed with an anticipated foreclosure proceeding; the amount in dispute is small; and the issue is not one that recurs often in federal court.  Under these circumstances, the more reasonable course is to attempt to predict how the New Hampshire Supreme Court would rule rather than to delay resolution of the

case by certifying the question.  See Porter v. Nutter, 913 F.2d 37, 40-41 (1st Cir. 1990) ("In diversity jurisdiction, our function is not to formulate a tenet which we, as free agents, might think wise, but to ascertain, as best we can, the rule that the state's highest tribunal would likely follow.") (internal quotations omitted).

   In my view, the New Hampshire Supreme Court would follow the approach advocated by the Restatement of Property even though it represents a minority position among those courts that have squarely addressed the issue.  The majority rule permits junior lienholders to invoke equitable subrogation if they negligently fail to learn of an intermediate lien, but denies similar protection to lienholders, like Bank of America, who were aware of an intermediate lien but were arguably negligent in failing to pay it off.  In both cases, the intermediate lienholder will receive a windfall unless the junior lienholder is subrogated to the position of the senior lienholder.  I cannot conceive of a reason why equity would allow such a windfall in one case but not the other.  Accordingly, I decline to adopt a rule that would deny equitable subrogation to junior lienholders who have actual knowledge of an intermediate lien.

   When Bank of America refinanced Burke's loan in 2008,

Countrywide "reasonably expected to get security with priority equal to the mortgage being paid." Restatement of Property § 7.6 cmt. e; Doc. No. 16-1, at 9-10. The fact that it knew of Citizens' lien and failed to discharge it is irrelevant. See Restatement of Property § 7.6 cmt. e ("[T]he payor's notice, actual or constructive, is not necessarily relevant"). As such, Bank of America is entitled to equitable subrogation, and its lien retains first priority.

## IV.  CONCLUSION

For the reasons stated above, I grant Bank of America's motion for summary judgment (Doc. No. 16), and deny Citizens' motion for summary judgment (Doc. No. 18).

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

December 21, 2015 2015

cc:   Kenneth D. Murphy, Esq.
      Brenna A. Force, Esq.
      Geoffrey Williams Millsom, Esq.
      Kelly Martin Malone, Esq.
      Michael Kily, Esq.